PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-1448

_____

MICHELLE MAMMARO

v.

NEW JERSEY DIVISION OF CHILD PROTECTION
AND PERMANENCY,
formerly known as DIVISION OF YOUTH
& FAMILY SERVICES;
WATCHUNG POLICE DEPARTMENT;
KARA P. WOOD, in her official capacity as Director of
DCP&P; ALLISON BLAKE, in her official capacity
as the Commissioner of the Department of
Children and Families;
JOSEPH R. CINA, in his official capacity as
Acting Chief of Police of the Watchung Police Department;
ALIREICHEN GRAZIANI, in her individual capacity;
BENJAMIN REHIG, in his individual capacity;
SUAN HACKER, in her individual capacity;
REBECCA LABARRE, in her individual capacity;
KRISTA DEBROUX, in her individual capacity;
OMEGA LABOATORY INC;
ANDREW HART, in his individual capacity;
SCOTT TALLMADGE, in his individual capacity;
PATRICK MINNO;

JOHN DOES 3-8, POLICE OFFICERS
OF WATCHUNG POLICE DEPARTMENT, in their
individual capacities

> The New Jersey Division of Child
> Protection and Permanency;
> Commissioner Allison Blake;
> Director Kara P. Wood;
> Alireichen Graziani; Benjamin Rehig;
> Rebecca LaBarre; and Krista DeBroux,

> Appellants

———————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-13-cv-06483)
District Judge: Honorable Freda L. Wolfson

———————————

Argued October 7, 2015

Before: McKEE, Chief Judge, AMBRO,
and HARDIMAN, Circuit Judges

(Opinion filed:  February 19, 2016)

John J. Hoffman, Esquire
   Acting Attorney General of New Jersey
Michael C. Walters, Esquire    (Argued)
Randall B. Weaver, Esquire
Benjamin H. Zieman, Esquire
Office of Attorney General of New Jersey

Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ   08625

     Counsel for Appellants

Kenneth J. Rosellini, Esquire   (Argued)
636A Van Houten Avenue
Clifton, NJ   07013

     Counsel for Appellee

————————————

OPINION  OF  THE  COURT

————————————

AMBRO, <u>Circuit Judge</u>

Appellee Michelle Mammaro filed this civil rights action claiming that the temporary removal of her child from her custody by the New Jersey Division of Child Protection and Permanency (the "Division") was a violation of her substantive due process right as a parent.  On a motion to dismiss, the District Court held that several individual caseworkers were not entitled to qualified immunity.  The caseworkers filed this interlocutory appeal, and for the reasons that follow we conclude that they are immune from suit.

I.

Because this case comes to us on a Rule 12(b)(6) motion to dismiss, the facts are drawn from the allegations contained in Mammaro's amended complaint, which we

3

accept as true. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

On July 22, 2011, Mammaro first came to the Division's attention when she was taken to a hospital for injuries inflicted by her husband, Damon. Although D.M., Mammaro's one and a half year old child, was not harmed, Mammaro met with a child protective services worker from the Division—then known as the New Jersey Division of Youth and Family Services. She agreed to send D.M. to stay with her brother-in-law for that night and was treated for her injuries and released the same day. Damon was charged with several criminal offenses, including second degree aggravated assault, and Mammaro sought a restraining order against him.

At the first hearing on the restraining order, a Division caseworker was present and told Mammaro that someone had made allegations against her of child neglect based on drug use. The caseworker threatened to separate Mammaro and D.M. unless she submitted to a drug test. Mammaro complied and tested positive for marijuana. (She admits to using a small amount of marijuana to calm herself after coming home from the hospital.) At the final restraining order hearing, the caseworker appeared again and demanded that Mammaro take another drug test. She again complied and again tested positive, with the second test showing a smaller level of marijuana than the first.[1] Following these

---

[1] A hair follicle test in November 2011 showed a very small amount of marijuana and cocaine, but the amount found was too low to meet the standard for a positive test.

Although Chief Judge McKee joins this opinion in its entirety, he notes his concern with the misleading nature of the Division's brief on this point. The brief stated that

4

Mammaro "submitted to a hair follicle drug test, which was positive for cocaine and marijuana." However, at oral argument, after counsel for Mammaro represented that she never tested positive for cocaine, the Division's counsel (who was involved in drafting the brief) was given an opportunity to clarify whether the hair follicle test for cocaine was positive, as represented in the brief, or negative. Counsel first responded that the result was "inconclusive," but then conceded that Mammaro's hair follicle analysis was "negative" for cocaine.

Mammaro's test showed 100 picograms/milligram ("pg/mg") of cocaine. The Division's guidelines for concluding if a person has used cocaine requires at least 500 pg/mg. Omega Laboratories requires that a test result must be "greater than its above listed cutoff" of 100 pg/mg. The testing equipment has a margin for error of 20 percent. Accordingly, given the thresholds employed by the lab and the Division's own guidelines, Mammaro's test results were negative.

Chief Judge McKee believes that it is (at best) unfortunate and (at most) disingenuous and intentionally misleading for the Division to have stated, without qualification or explanation, that Mammaro was using cocaine. The failure to explain or qualify such an assertion is particularly egregious here where the focus of our inquiry is the reasonableness of the challenged interference with Mammaro's custody of her child, and the alleged bad faith of the Division. Moreover, the misstatement in the brief should not be minimized merely because the removal of Mammaro's child preceded the disputed cocaine analysis. By its own statement, the Division provided the misleading lab results for "background

5

drug tests, and based on allegations from Damon and Mammaro's brother-in-law that Mammaro had used drugs in front of D.M., the Division filed for temporary guardianship of D.M. Mammaro alleges that the Division does not have a policy of pursuing every positive drug test as a case of child abuse.

While the petition for temporary guardianship was pending, the Division placed Mammaro and D.M. in a safe house for victims of domestic violence. There, Mammaro's interaction with D.M. was supervised by Division employees. Sometime later, Mammaro notified the Division that she was unable to get an extension to stay in the house, but it failed to make arrangements for Mammaro to remain there. Without notifying any Division representative, Mammaro then moved with D.M. to a private home. When the Division learned that Mammaro was no longer in supervised housing, it had police remove D.M. from Mammaro's custody. Mammaro challenged the removal in New Jersey Superior Court, and within a few days the Division returned D.M. to her and approved the new housing. In June 2012, the Superior Court dismissed the petition for temporary guardianship and found that she had not abused or neglected D.M.

Mammaro thereafter filed a complaint in the District of New Jersey against numerous defendants, including the Division and five Division employees (the employees include two supervisors and three caseworkers, but for ease of reference we refer to them collectively as caseworkers

---

information." Since the information was, by the Division's own admission, irrelevant to its decision to interfere with Mammaro's parental rights, Chief Judge McKee is concerned that it may have been offered in an attempt to "poison the [analytical] well."

6

throughout).  In an amended complaint, Mammaro raised claims for violation of her rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to our Constitution and the New Jersey Civil Rights Act.

The Division filed a motion to dismiss.  Although the District Court granted the motion in almost all other respects, it denied the motion with respect to one claim against the caseworkers: a substantive due process claim for interfering with Mammaro's parental rights by temporarily removing D.M. from Mammaro's custody.  The Division argued that its employees were protected by qualified immunity, but the Court rejected that defense, concluding that Mammaro had adequately alleged a violation and that the right at issue was clearly established at the time of the alleged conduct.  The caseworkers appeal that decision.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have appellate jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine, which is an exception to the usual requirement of a final decision for appellate review.  "The requirements for collateral order appeal have been distilled down to three conditions: that an order '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'"  *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993)).  "[A] denial of qualified immunity that turns on an issue of law—rather than a factual dispute—falls within the collateral order doctrine."  *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004). The only issue presented to us is whether the alleged violation of substantive due process was clearly established.  This is a

7

question of law over which our review is unrestricted. *Atkinson v. Taylor*, 316 F.3d 257, 261 (3d Cir. 2003).

## III.

Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To overcome qualified immunity, a plaintiff must plead facts "showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 2080. In our case, the Division has not challenged whether Mammaro sufficiently alleged a violation of substantive due process, and we limit our review to the question of clearly established law.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 2083 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). We look first for applicable Supreme Court precedent. Even if none exists, it may be possible that a "robust consensus of cases of persuasive authority" in the Court of Appeals could clearly establish a right for purposes of qualified immunity.

8

*Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam) (quoting *City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1778 (2015)).

What is the right here? The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. From the text, it is clear that the Clause has a procedural component, requiring the state to afford an adequate level of process (notice and an opportunity to be heard) before depriving persons of a protected interest. *Mathews v. Eldridge*, 424 U.S. 319 (1976). But the Clause also has a substantive component. "The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000).

In bringing a substantive due process claim, one alleges that the government has abused its power in an arbitrary manner that "shocks the conscience." *Cty. of Sacremento v. Lewis*, 523 U.S. 833, 846-48 (1998). In this case Mammaro alleged the arbitrary interference with her right to parent her child. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000). She contends that the right at issue is her right to be free from the temporary removal of her child unless there is "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997). This definition is too broad for purposes of qualified immunity, however. We must frame clearly established law "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). "The general proposition, for example, that an

9

unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 131 S. Ct. at 2084.

We thus consider the substantive due process right of Mammaro as a parent in light of the specific allegations in her amended complaint. She contends that the caseworkers removed her child after she violated the restrictions on her contact with D.M. by removing the child from supervised housing. At the time of the removal, Mammaro alleges that there was insufficient evidence of past abuse or risk of future abuse by her to justify D.M.'s removal. Even if so, for Mammaro's case to have legs she must show that the law was so well established at that time a reasonable caseworker would have understood that temporarily removing a child in those circumstances would violate substantive due process.[2]

We conclude that there was no consensus of authority that temporarily removing a child after the parent takes the

---

[2] We note that the District Court's analysis of clearly established law differs from what the Supreme Court requires. When addressing whether the caseworkers' actions were clearly unconstitutional, the District Court cited only an unpublished decision. *Weaver v. Marling*, No. 12-cv-1777, 2013 WL 4040472 (W.D. Pa. Aug. 8, 2013) (considering whether three-month separation of parent and child violated substantive due process). As well done as that opinion might be, it is not by itself an indication of a clearly established constitutional right. Moreover, the opinion postdates the events in this case and thus could not have given fair notice to the caseworkers of a clearly established right. *See Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004) (per curiam).

child from approved housing violates substantive due process. Beginning with the Supreme Court, it has recognized that, as a general matter, "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66. From this fundamental right flows, for example, certain procedural due process rights for parents when the state seeks to deprive them permanently of custody. *See Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 31 (1981); *Stanley v. Illinois*, 405 U.S. 645, 649 (1972). But the Court has never found a substantive due process violation when state agencies temporarily remove a child, whatever the circumstances of the removal. Accordingly, no Supreme Court precedent clearly establishes that D.M.'s temporary removal from her mother's custody violated substantive due process.

Likewise, assuming a consensus of persuasive authority could clearly establish a right, there is no consensus that removing D.M. was an unconstitutional interference with the parent-child relationship. Mammaro's reliance on *Croft* to argue otherwise is misplaced. Putting aside the question of whether one case is sufficient to establish a "robust consensus of persuasive authority," *Croft* is factually off point. There a caseworker followed up on a "six-fold hearsay report by an anonymous informant" of child abuse. *Croft*, 103 F.3d at 1126. After interviewing the father and his child, the caseworker uncovered no evidence of abuse, yet still threatened to remove the child that night. *Id.* at 1124. We recognized that child welfare agencies may be justified in removing a child when there are fears of abuse. But before separating parent and child, caseworkers need "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id.* We concluded that the

11

caseworker lacked objectively reasonable evidence of abuse and that the separation of parent and child was an arbitrary abuse of government power. *Id.* at 1127.

We have much different facts than did *Croft*. Mammaro's husband and brother-in-law had made an allegation of neglect that was supplemented by two positive drug tests of Mammaro. And the immediate impetus for D.M.'s removal was Mammaro's decision to take D.M. from supervised housing, a factor not present in *Croft*. While Mammaro does allege that the caseworkers failed to assist her in making new arrangements for approved housing, nothing in *Croft* suggests that the failure to assist her—however unfair and counterproductive it may have been—was an arbitrary abuse of government power that shocks the conscience. Accordingly, *Croft* did not put the caseworkers on notice that their conduct violated substantive due process.

\* \* \* \* \*

Caseworkers investigating allegations of child abuse often must make difficult decisions based on imperfect information. Particularly when deciding whether to separate parent and child, a caseworker must weigh the rights of the parent against the rights of the child and the risk of abuse. We are not the first to note that the failure to act quickly and decisively in these situations may have devastating consequences for vulnerable children. *See, e.g.*, *Arredondo v. Locklear*, 462 F.3d 1292, 1294 (10th Cir. 2006); *Millspaugh v. Cty. Dep't of Pub. Welfare*, 937 F.2d 1172, 1176-77 (7th Cir. 1991). This is why caseworkers are protected by qualified immunity unless clearly established law puts them on notice that their conduct is a violation of the Constitution. In this case, there was no such clearly established law, and qualified immunity covers the Division's caseworkers. We

12

thus reverse the decision of the District Court and remand for it to enter judgment in their favor.