**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4223
_____

JESSIE DENKINS; CHERYL SHELTON;
EMMA WARING; MAXINE CAMPBELL,
Appellants

v.

STATE OPERATED SCHOOL DISTRICT OF
THE CITY OF CAMDEN; PAYMON ROUHANIFARD;
ANGELA GILBERT; JOHN DOE; JANE DOE 1-10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J.. No. 1-16-cv-00653)
District Judge: Honorable Jerome B. Simandle
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 11, 2017
_____

Before: AMBRO, RESTREPO, and COWEN, *Circuit Judges*.

(Filed: November 9, 2017)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Jessie Denkins and other former school leaders in the city of Camden, New Jersey, appeal the decision of the District Court to dismiss their § 1983 suit for deprivation of a property interest without due process against the State Operated School District, Superintendent Paymon Rouhanifard, former evaluator Angela Gilbert, and others, on the basis of sovereign and qualified immunity. We will affirm.

**I**

As we write for the benefit of the parties, we set out only the facts necessary for the discussion that follows. In 2013, the state of New Jersey took over the Camden School District. As part of the full takeover, the State appointed a new superintendent, Rouhanifard, accountable directly to the State's Commissioner of Education. Early in his tenure, Rouhanifard hired a group of school leader trainer/evaluators, including Angela Gilbert. Those evaluators' duties included observing and grading all school leaders in the District on a four-point scale. Leaders with average scores falling below 3.0 stood at risk of removal on the basis of ineffectiveness. Denkins and the other Plaintiff-Appellants received evaluations, including at least one each from Gilbert, that prompted the District to begin (or to threaten to begin) proceedings to adjudicate them as ineffective and abrogate their tenure. Because such a finding would cause collateral consequences with respect to their professional licensure and state pension, each of the Appellants preemptively resigned rather than contest the low ratings.

2

While conducting school leader evaluations, Gilbert did not possess the license required by then-existing state law for a person in her position.  Prior to her hire, Gilbert informed the District of this fact, but the District hired her anyway and allowed her begin her job without even a provisional certification.  When Appellants discovered this fact in 2015, they instituted this suit, alleging that they had been deprived of a property right to their continued, tenure-protected employment without due process of law.[1]  The District Court granted Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the State Operated School District, the District Court applied sovereign immunity under the Eleventh Amendment.  Rouhanifard received sovereign immunity, as well.  For Gilbert, the District Court dismissed on the basis of qualified immunity.  Plaintiffs appeal the dismissals as to all three Defendants.

## **II**[2]

### **A**

Under the Eleventh Amendment, a state is immune to suit from its own citizens.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  That immunity

---

[1] Plaintiffs also raised other causes of action under state law, over which the District Court declined to exercise supplemental jurisdiction after dismissing the federal claims.  The New Jersey state court is currently holding those state claims in abeyance pending the outcome of this action.

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our standard of review of a District Court's grant of a motion to dismiss is plenary.  *N.Y. Shipping Ass'n Inc. v. Waterfront Comm'n of N.Y. Harbor*, 835 F.3d 344, 352 (3d Cir. 2016).  On review, we apply the same standard as the District Court.  *Id*.  To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

extends to entities that are not the state itself if the state is the real party in interest in the suit. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). In assessing whether the state is the real party in interest in suits against non-state public entities, our Court has set out a comprehensive list of nine factors, *Urbano v. Bd. of Managers*, 415 F.2d 247 (3d Cir. 1969), *cert. denied*, 397 U.S. 948 (1970), and subsequently "divide[d] the nine *Urbano* factors into three larger questions." *Fitchik v. N.J. Transit Rail Ops., Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc). Those questions are: (1) whether the money that would pay the judgment would come from the state treasury; (2) the status of the entity under state law; and (3) the degree of autonomy of the entity. *Id.* Although we formerly assigned primacy to the funding factor, we have recalibrated those factors at the direction of the Supreme Court, and now weight them co-equally. *First Jud. Dist. of Penn. v. Benn*, 426 F.3d 233, 240 (3d Cir. 2005); *see also Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 431 (1997).

Our Court last addressed the sovereign immunity status of the Camden School District in 2006, holding that the Board of Education was not an arm of the state and therefore not deserving of sovereign immunity. *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 228 (3d Cir. 2006). The parties agree that factual changes since *Febres*— specifically, the full state takeover and the relocation of responsibilities from the Board to the state-appointed Superintendent—necessitate a reassessment of that analysis. We address each factor in turn.

4

State Treasury Factor

In assessing the state treasury prong of the *Fitchik* analysis, "[w]e consider three subfactors: (1) a State's legal obligation to pay a money judgment entered against the alleged arm of the State; (2) alternative sources of funding (i.e., monies not appropriated by the State) from which the entity could pay such judgments; and (3) specific statutory provisions that immunize the State from liability for money judgments." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 86 (3d Cir. 2016). Although the District Court assessed this prong as supporting a grant of sovereign immunity for the School District, we disagree.

With respect to the first subfactor, the State is not legally obligated to pay a judgment entered against the District. Although the District might pay a judgment with funds that originated with the State, the State is not legally obligated to pour additional money into the budget to fund such a judgment. "Although the [state] might well choose to appropriate money to [an entity] to enable it to meet a shortfall caused by an adverse judgment, such voluntary payments by a state simply do not trigger Eleventh Amendment immunity." *Febres*, 445 F.3d at 234. By contrast, "a state's legal liability (or lack thereof) for an entity's debts merits far greater weight, and is therefore the key factor in our assessment of the state-treasury prong." *Id.* at 236.

With respect to the second subfactor, alternative sources of funding, the *Febres* Court explicitly rejected the argument that, because (at the time) 85% of the Camden School District's funding came from the State of New Jersey, the District could not satisfy a judgment except with State money. *Id.* at 233. Noting that non-State funds

5

"still total a significant sum," the Court rejected the idea that the city's "relatively poor tax base" ought to control the outcome. *Id.* at 233, 234. Holding to the contrary would work an injustice against people seeking redress for wrongs committed by (or by employees of) poorer school districts with less robust local tax bases. To the extent that State dollars come with strings that abrogate local autonomy or increase State control, we consider that dynamic under the appropriate *Fitchik* factor that addresses autonomy and control.

The state treasury factor thus cuts against immunity.

### Status Under State Law

"The second *Fitchik* factor requires us to ascertain the status of the agency under state law, which includes such considerations as how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation." *Maliandi*, 845 F.3d at 91 (internal quotations omitted). In considering status under state law, "we have also considered the entity's authority to exercise the power of eminent domain, application of state administrative procedure and civil service laws to the entity, the entity's ability to enter contracts and make purchases on its own behalf, and whether the entity owns its own real estate." *Id.*

The District Court found that "in light of the specific circumstances of the State take-over," the status under state law prong cut in favor of immunity. J.A. 18. We agree. As Plaintiffs acknowledged in their complaint, N.J. Stat. Ann. § 18A:7A-34, titled "Creation of school district under full State intervention upon determination of failure of

local school district," applies to the Camden State Operated School District. J.A. 287.

Subsequent statutes concerning full State takeover make the status of such districts quite clear.[3]

The second *Fitchik* factor weighs in favor of immunity.

Autonomy of the Entity

"*Fitchik* directs that autonomy be analyzed as a distinct factor, focusing on the entity's governing structure and the oversight and control exerted by a State's governor and legislature." *Maliandi*, 845 F.3d at 96. "The lesser the autonomy of the entity and greater the control by the State, the greater the likelihood the entity will share in the State's Eleventh Amendment immunity." *Id.* In assessing state control, the *Maliandi* Court looked to whether local boards were empowered to act "without recourse or reference to any department or agency of the state," *id.*, and the number of "state-imposed limitations" with minimal effect. *Id.* at 97. It considered whether the entity

---

[3] N.J. Stat. Ann. § 18A:7A-35(a) ("The schools of a school district under full State intervention may be conducted by and under the supervision of a State district superintendent of schools appointed by the State board upon recommendation of the commissioner."); *id.* at 7A-35(f) ("The State district superintendent may, if deemed appropriate by the commissioner, make, amend and repeal district rules, policies and guidelines, not inconsistent with law for the proper conduct, maintenance and supervision of the schools in the district."); N.J. Stat. Ann. § 18A:7A-39(a)(1) (providing that the State district superintendent takes over the power to "sue in the district's corporate name."); *id.* at 7A-39(1)(d) ("all warrants for claims or expenditures approvable by a district board of education . . . may be authorized by the State district superintendent."); *id.* at 7A-39(1)(e) ("Authority . . . relative to the acquisition and disposition of property . . . may, in a school district under full State intervention, be exercised by the State district superintendent."); *id.* at 7A-39(1)(f) ("[T]he authority and powers vested in boards of education by . . . New Jersey Statutes may in a school district under full State intervention, be exercised by the State district superintendent.").

7

could make "unregulated spending decisions," and whether the people with decision-making authority enjoyed for-cause protection. *Id.* at 98.

At the time of *Febres*, Camden's school district was under a more limited form of state intervention under the New Jersey Municipal Rehabilitation and Economic Recovery Act ("MRERA"). *Febres*, 445 F.3d at 231. Under that law, the local school board retained decision-making power, but its powers were subjected to the Governor's "constrained" veto power under MRERA's "limited school district oversight." *Id.* Even under that fact pattern, the *Febres* Court held that the autonomy factor favored immunity. *Id.* at 232. Since *Febres*, the Camden School District has transitioned from limited intervention under the MRERA to full State intervention under N.J. Stat. Ann. § 18A:7A-34 *et seq.* As described above, control of budgetary decisions and the day-to-day governance of the school system is vested with a superintendent appointed by the State, who enjoys no for-cause protection and exerts State policy and will. Given that the State exercises more control over the District now than it did when the *Febres* Court considered this issue and held that even that more limited intervention favored immunity, we similarly hold that the autonomy factor weighs in favor of immunity.

In sum, two of the three co-equal *Fitchik* factors—status under state law, and autonomy—weigh strongly in favor of immunity. Accordingly, we affirm the District Court's grant of sovereign immunity to the State Operated School District. *See Benn*, 426 F.3d at 240.

**B**

8

The District Court also granted Rouhanifard's 12(b)(6) motion on the basis of sovereign immunity. Sovereign immunity extends to both state agencies and state officers, as long as the state is the real party in interest. *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 857 (3d Cir. 2014) (quoting *Fitchik*, 873 F.2d at 659). Appellants' primary argument for reversing the District Court on sovereign immunity for Rouhanifard relies on the proposition that the State Operated District does not deserve sovereign immunity for itself. **Appellants' Br. at 25**. That argument is unavailing.

Even if analyzed distinctly, Rouhanifard deserves sovereign immunity in this context, as the State is the real party in interest. As the State-appointed superintendent, Rouhanifard "shall perform such duties and possess such powers as deemed appropriate by the commissioner." N.J. Stat. Ann. § 18A:7A-35(d). "[N]o person so appointed shall acquire tenure nor shall the commissioner, with approval of the State board, be precluded from terminating the superintendent's services pursuant to the terms of the superintendent's individual contract of employment." *Id*. at 7A-35(b). Appellants argue that the New Jersey statutory section mandating that "[f]or the purpose of the New Jersey Tort Claims Act . . . the State district superintendent shall be considered a State officer," N.J. Stat. Ann. § 18A:7A-35(b), does not answer the immunity question as to federal law issues. Regardless of the answer to that question, the superintendent's appointment by the State's Commissioner of Education, his/her lack of for-cause protection, and his/her earning a salary set by the Commissioner, all suggest the superintendent's status under state law is as a state official, and that the superintendent lacks autonomy from the State. We will affirm the District Court's grant of sovereign immunity to Rouhanifard.

## C

The District Court also granted Defendant Gilbert's 12(b)(6) motion after finding that she was entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). That two-step analysis—was there a violation of a Constitutional right, and was the right clearly established—may begin with either step. *Id*. at 236. We exercise our discretion to begin with the second step of the analysis. Appellants may well make out a constitutional due process violation in having been deprived of a property interest in continued tenure-protected public employment, *see Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972), by the District having obtained their involuntary resignations "by deceiving or mispresenting a material fact to the employee," *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999). At step two, however, we must assess whether a "reasonable official would understand that what [s]he [did] violate[d] that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

To determine the objective reasonableness of an official's action, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *Mammaro v. N.J. Div. of Child Protec. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (citation omitted). In context, we consider whether a reasonable school evaluator-trainer in Gilbert's position would have believed that her conduct was unlawful. Here, as Plaintiffs

admitted in their initial complaint, "[a]fter her acceptance of employment but prior to the actual hire date, Defendant Gilbert provided to the Defendant District information that she did not possess a valid New Jersey Administrator certificate/endorsement." J.A. 289. There exists no precedent "factually similar to the plaintiff's allegations" that would have put Gilbert on notice that evaluating the Plaintiffs after the District knowingly hired her without a license might amount to a due process violation.

Therefore, we affirm qualified immunity as to Gilbert.

## III

For the foregoing reasons, we will affirm the judgment of the District Court.

11