NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 17-2110

DELILAH A. GRAHAM-SMITH;
RODNEY G. SMITH,

Appellants

v.

WILKES-BARRE POLICE DEPARTMENT;
CITY OF WILKES-BARRE;
ALAN GRIBBLE, In His Individual Capacity;
GERARD E. DESSOYE, In His Official and Individual Capacities

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No.: 3:14-cv-2159)
District Judge: Honorable James M. Munley

Submitted under Third Circuit L.A.R. 34.1(a)
on January 18, 2018

(Opinion filed: June 28, 2018)

Before: AMBRO, RESTREPO, and FUENTES, *Circuit Judges*

O P I N I O N[*]

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*:

Plaintiff-Appellants Delilah Graham-Smith and Rodney G. Smith appeal the District Court's grant of summary judgment on their claim of excessive force in favor of Defendants-Appellees City of Wilkes-Barre and police officer Alan Gribble, in his individual capacity. For the following reasons, we will affirm the District Court's decision.

I.

Because we write for the parties, we include only those facts relevant to the disposition of the case before us.

Graham-Smith was involved in a car accident with another automobile on the morning of November 12, 2012. Graham-Smith acted "nervous and agitated" at the scene of the accident.[1] She crossed the street to go to Luzerne Bank, though Graham-Smith disputes that her conduct constitutes the Pennsylvania misdemeanor of leaving the scene of an accident. In the bank, Graham-Smith was visibly shaken and upset.

Gribble, a police officer, arrived at the scene of the accident approximately six minutes later. After speaking with the driver of the other car involved in the accident, Gribble learned that Graham-Smith had left the scene. He determined that Graham-Smith was the owner of the other car, and eventually arrived at the bank. Gribble ordered Graham-Smith to return to the scene of the accident, but she did not.

---

[1] App. 40a ¶ 25.

2

When deposed, Gribble testified that Graham-Smith told him on previous occasions that she had "psychiatric issues,"[2] and was "on some medication or medications."[3] However, none of these medications were for psychiatric treatment. Gribble testified that he believed Graham-Smith was "not speaking rationally,"[4] and that her agitation was escalating to a point where he believed she might harm herself or someone else.

Police officers in Wilkes-Barre, including Gribble, are required to complete 40 annual hours of training related to their professional responsibilities, which includes training on when to petition for mental health examinations. During his interaction with Graham-Smith at the bank, Gribble believed it was necessary to take Graham-Smith to the hospital for a mental health examination. Graham-Smith refused to leave her chair when prompted by Gribble, and wrapped herself around the chair. Gribble pulled her thumb back to get Graham-Smith out of the chair, which Graham-Smith admits was in compliance with the Wilkes-Barre Police Department's Use of Force Policy. He handcuffed her and removed her from the bank. There are disputes regarding whether Gribble's actions in removing Graham-Smith from the bank fell under the Use of Force Policy. Graham-Smith complained about the tightness of the handcuffs, and it is disputed whether Gribble examined the handcuffs in response.

---

[2] App. 39a ¶ 14.
[3] App. 39a ¶ 15; ¶ 108a.
[4] App. 43a ¶ 41; ¶ 122a.

Gribble transported Graham-Smith to the hospital, where she was involuntarily committed for a mental health evaluation. Medical professionals determined she did not require psychiatric treatment. She was given pain medication at the hospital. Nearly two years later, in October 2014, Graham-Smith saw a doctor for pain and loss of sensation in her hands, which she associated with Gribble's use of handcuffs. The physician noted that Graham-Smith had been involved in a motor vehicle accident as well. This doctor ordered an electromyogram to assess Graham-Smith's nerves for ulnar compression neuropathy or carpal tunnel syndrome. The results of this exam are not in the record, nor was the physician deposed, but according to Graham-Smith the doctor assessed Graham-Smith to have carpal tunnel syndrome. Graham-Smith was never charged with misdemeanor leaving the scene of an accident.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment and apply the same standard as the District Court.[5] Summary judgment is appropriate if and only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[6] The evidence must be viewed in the light most favorable to the nonmoving party.[7] "We do not weigh the evidence;

---

[5] *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010).
[6] Fed. R. Civ. P. 56(a).
[7] *Kelly*, 622 F.3d at 253.

rather we determine 'whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.'"[8] We may affirm on any basis in the record.[9]

## III.

Graham-Smith brought three claims against the City and Gribble upon which summary judgment was granted: unlawful seizure under 42 U.S.C. § 1983, false imprisonment under 42 U.S.C. § 1983, and excessive force under 42 U.S.C. § 1983. On appeal, Graham-Smith only challenges the grant of summary judgment on the excessive force claim. Because summary judgment in favor of the City and Gribble was appropriate for this claim, we will affirm.

## A.

A claim for excessive force derives from the Fourth Amendment, and "a plaintiff must show that a 'seizure' occurred and that it was unreasonable under the circumstances."[10] This is not an evaluation on the reasonableness of the underlying arrest, but on the reasonableness of the use of force exerted in the course of the seizure.[11] "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[12]

---

[8] *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016).
[9] *Helvering v. Gowran*, 302 U.S. 238, 245 (1937) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.").
[10] *Lamont v. New Jersey*, 637 F.3d 177, 182–83 (3d Cir. 2011) (citing *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989)).
[11] *See Graham v. Connor*, 490 U.S. 386, 397 (1989).
[12] *Id.* at 396.

"[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . ."[13] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[14] "[I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight."[15] These circumstances include the severity of injury resulting from the force used, though the absence of injury does not legitimize otherwise excessive force.[16]

Here, it is beyond material dispute that Gribble's use of force was reasonable as a matter of law under the totality of the circumstances. The reasonableness inquiry requires us to assess the conduct at issue for "reasonableness at the moment," recognizing

---

[13] *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

[14] *Id.* at 396–97.

[15] *Id.* at 396.

[16] *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) ("We do not agree that the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that physical force was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality."), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199, 209–11 (3d Cir. 2007); *cf. Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."); *Kopec v. Tate*, 361 F.3d 772, 778 n.7 (3d Cir. 2004) (distinguishing cases where use of force or resulting injury were *de minimis*).

that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment."[17]

It is not disputed that Graham-Smith refused to comply with Gribble's direction to return to the scene of the accident, or that she took physical measures to prevent Gribble from arresting her or removing her from the bank. Although Graham-Smith disputes here that this constitutes resisting arrest under the enumerated considerations of *Graham*'s reasonableness inquiry, a reasonable officer would certainly view wrapping oneself around a chair to prevent being moved as resistance.

The dispute as to Gribble's conduct in removing Graham-Smith from the bank after handcuffing her is immaterial: assuming that Gribble did in fact "run" Graham-Smith out of the bank while forcing Graham-Smith's hands towards her head, that use of force was reasonable within the Fourth Amendment. Although the severity of the underlying crime of arrest was mild and the circumstances of the arrest were relatively benign, Gribble was required to remove Graham-Smith from the bank. With respect to this conduct specifically, Graham-Smith has not adduced sufficient evidence to connect this conduct to the injuries she alleges, though that is not dispositive. Graham-Smith has not adduced sufficient evidence to create a material dispute as to the reasonableness of this conduct. We do not determine that Gribble's use of force was ideal or even the minimal force necessary when viewed in hindsight: those determinations are beyond the

---

[17] *Graham*, 490 U.S. at 396 (citation and internal quotation marks omitted).

7

scope of the legal inquiry.  We only hold that a reasonable officer in the moment could have conducted himself similarly.

Finally, Graham-Smith contends that the handcuffs restraining her were excessively tight, leading to injury.  There is a dispute as to whether Gribble examined the handcuffs in response to Graham-Smith's complaints of wrist pain and tight handcuffs, so we resolve that dispute in favor of Graham-Smith and assume that Gribble did not examine the handcuffs.  Graham-Smith has not adduced sufficient evidence to create a material dispute as to whether Gribble handcuffed her excessively and unreasonably tightly.  *Kopec v. Tate* held that the reasonableness of tight handcuffing presents a question for the jury where the resulting injuries required over a year of treatment from a hand surgeon.[18]  In doing so, it discussed the persuasive authority of our sister Circuits holding that the reasonableness of tight handcuffing did not raise a question of fact for the jury where the resulting injury was *de minimis*.[19]

As discussed previously, excessive force is not determined by injury alone.  However, the unreasonableness of handcuffing requires some indication that it was done unnecessarily or excessively.  In *Kopec*, which specifically notes that "this opinion should not be overread as we do not intend to open the floodgates to a torrent of handcuff claims,"[20] the totality of circumstances put the arresting officer on notice that the force employed was excessive.  These circumstances included specific complaints that the

---

[18] *Kopec*, 361 F.3d at 774, 776.
[19] *Id.* at 778 n.7 (collecting and discussing cases).
[20] *Id.* at 777.

8

arrestee was losing feeling in his hand as well as the arrestee falling to the ground and beginning to faint.[21] Here, the signs of excess were limited to Graham-Smith's complaints that the handcuffs were hurting her and were cutting her wrists. Graham-Smith has failed to adduce sufficient evidence to create a material dispute as to whether actual injury resulted from the handcuffs beyond superficial lacerations. The only evidence in the record regarding subsequent medical treatment is a report from a treating physician approximately twenty-three months after the incident. This report does not opine as to the cause of Graham-Smith's expressed symptoms, only noting that she complained of pain "secondary to an arrest with offensively placed handcuffs," and that she was involved in a motor vehicle accident.[22] This establishes only that Graham-Smith sought treatment and was referred for assessment via electromyogram: we cannot reasonably infer either the cause of her pain or the results of the ordered test from the report in the record. Without sufficient evidence to establish a dispute as to the excessiveness or unreasonableness of Gribble's handcuffing of Graham-Smith, there exists no question of fact for a jury to decide.

Because Graham-Smith failed to present sufficient evidence to establish a dispute of material fact in this case, the District Court properly granted summary judgment on her claim for excessive force under 42 U.S.C. § 1983.

---

[21] *Id.* at 774.
[22] App. 206a–207a.

B.

Graham-Smith also contends that Gribble is not entitled to qualified immunity on her excessive force claim. The District Court held that Gribble is entitled to qualified immunity. We agree. Qualified immunity is an affirmative defense designed to "protect government officials from insubstantial claims in order to 'shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"[23] "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"[24] It prohibits a plaintiff from recovering money damages against a federal or state official unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[25]

As discussed above, Graham-Smith has not established the violation of any of her constitutional rights by Gribble's reasonable use of force. Therefore, Gribble is entitled to qualified immunity.

C.

Because Graham-Smith has not adduced sufficient evidence to establish a dispute of material fact that her constitutional rights were violated, summary judgment is

---

[23] *Mammaro v. New Jersey Div. of Child Protection and Permanency*, 814 F.3d 164, 168 (3d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).
[24] *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[25] *Al-Kidd*, 563 U.S. at 735 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

likewise appropriate on her claim against the city for municipal liability under *Monell v.*

*Dep't of Social Servs.*[26]

IV.

For the foregoing reasons, we will affirm the decision of the District Court.

---

[26] 436 U.S. 658 (1978).