**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1258
_____

ISAAC GUEST, individually and as parent and natural guardian of his
minor children, I.G., M.G., S.G. and J.G.; NICOLE GUEST, individually
and as parent and natural guardian of her minor children, I.G., M.G., S.G. and J.G.,
Appellants

v.

COUNTY OF ALLEGHENY; DESARAE HORTON; JOEY MANUEL

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No. 2-20-cv-00130)
District Judge: Honorable Patricia L. Dodge

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 14, 2022

Before: AMBRO, KRAUSE, and BIBAS, Circuit Judges

(Opinion filed: December 28, 2022)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

AMBRO, Circuit Judge,

Plaintiffs Isaac and Nicole Guest (collectively, the "Guests") are the natural guardians and parents of four minor children. In March 2019, the Allegheny County Office of Children, Youth and Families ("Children's Office" or "Agency") received a referral asserting the Guests were involved in a domestic violence incident while Ms. Guest was holding J.G., one of their children. Defendant Desarae Horton, a Children's Office caseworker, investigated the matter.

That investigation led Horton to file a dependency petition alleging that one of the Guest children is a dependent child, as defined by 42 Pa. Cons. Stat. § 6302.[1] In addition to the domestic violence incident that spurred Horton's investigation, the petition details that police were called to the Guest residence two dozen times in 2018–19, that the Guests were charged with endangering the welfare of children in 2018, and that since 2016 the Children's Office received seven referrals concerning abuse in the family. Also included in the petition is an allegation that Mr. Guest violated probation and was in drug and alcohol counseling in 2014. The latter allegations, however, proved untrue; although Mr. Guest was accused of violating his probation, that charge was later withdrawn. And drug and alcohol counseling were never a condition of Mr. Guest's probation, though anger management counseling was.

_____

[1]  Specifically, the petition alleges the child "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his/her physical, mental, or emotional health, or morals." Appx. 344.

On May 15, 2019, a dependency conference hearing was held in the Court of Common Pleas of Allegheny County, Pennsylvania. The Judge expressed "serious concerns about the children being in [the Guests'] care" but issued a continuance so they could obtain counsel. Appx. 160. She warned the Guests that, in the interim, they must show "compliance" or "the Agency will be directed to remove the children." *Id.* She specifically instructed the Children's Office to seek an Emergency Custody Authorization Order ("Custody Order" or "Order") if it receives "any additional reports of domestic violence or allegations of physical abuse of any of the children." Appx. 167. The Judge also directed both parents to be drug tested before leaving the courthouse.

Despite the Judge's order, Mr. Guest left the courthouse without being drug tested. In turn, Horton, who attended the hearing as Children's Office representative, recommended to her supervisor, Defendant Joey Manuel, that the Children's Office seek a Custody Order. This, however, appears to have been a mistake. Though the Judge orally instructed the Agency to remove the children if the Guests did not "comply" with her directives, the order she entered the following day prescribed that action only after receiving further reports of domestic violence or physical abuse of the children. But Horton understood that the Children's Office should request a Custody Order if the Guests did not comply with either the Judge's order to get drug tested or her order to stop fighting.

Manuel then called the Assistant County Solicitor who represented the Commonwealth at the dependency hearing. The Assistant Solicitor affirmed Horton's

3

understanding of the Judge's order. Manuel then requested and obtained a Custody Order from the on-call judge.

That night, Horton and police officers arrived at the Guest residence to execute the Order. When Mr. Guest learned that it issued because he failed to get drug tested, he explained that a medical problem frustrated his ability to produce enough urine for the test. Horton relayed this information to Manuel, who told Horton to carry through the Custody Order because, in her view, the missed drug test showed non-compliance with the Judge's order, thereby requiring execution of the Order. Horton followed this instruction and placed the children in a foster home.

With the Custody Order soon expiring, Horton prepared a Shelter Care Application to ensure the children did not return to their parents. After a hearing, the hearing officer returned legal and physical custody to the parents after noting that the Judge did not specifically instruct the Children's Office to request a Custody Order based on testing. At the same time, the hearing officer ordered the children placed under the protective supervision of the Agency and found that "to allow [the children] to remain in the home would be contrary to the child[ren]'s welfare." Appx. 564. At the ensuing dependency hearing, the Court found the dependency petition's allegations supported by clear and convincing evidence. The Court maintained the parents' physical custody of the children and granted legal custody of them to the Children's Office.

After the dust settled, the Guests filed an action against Horton, Manuel, and Allegheny County (collectively, "Defendants") for violating their substantive due process

4

rights.[2]  The Guests alleged Horton and Manuel obtained the Custody Order under false pretenses and removed their children despite having no reasonable suspicion that they were being abused or neglected.  The Guests also contended that Allegheny County should be liable for maintaining a policy of executing custody orders when children are not in imminent danger.

The parties cross-moved for summary judgment, and the District Court granted Defendants' motion.  It ruled that Horton and Manuel have absolute immunity for their conduct related to seeking the Custody Order because that conduct is prosecutorial in nature.  The Court further held that both Horton and Manuel had qualified immunity for executing the Custody Order because they violated no clearly established constitutional rights by carrying out a court order.  The Court also determined that even if they did not have immunity, they were entitled to judgment in their favor because "no reasonable person could construe Defendants' actions as conscience shocking."  Appx. 32.  And the Court found Allegheny County not liable because its policy did not violate the Guests' rights.  The Guests timely appealed.

## I.       Standard of Review

We exercise plenary review of the District Court's grant of summary judgment and view the facts in the Guests' favor to determine whether "there [is] no genuine dispute as to any material fact."  *B.S. v. Somerset County*, 704 F.3d 250, 260 (3d Cir. 2013); Fed. R. Civ. P. 56(a).  We also exercise plenary review of the Court's grant of

---

[2]     The Guests' complaint also alleged a violation of their procedural due process rights.  That claim was dismissed, and the Guests do not appeal the dismissal.

5

absolute and qualified immunity. *See Yarris v. County of Delaware*, 465 F.3d 129, 134 (3d Cir. 2006). Because the Guests also urge us to grant summary judgment in their favor, we view the facts in the light most favorable to the defendants to determine whether the District Court properly denied their motion for summary judgment. *B.S.*, 704 F.3d at 260.

## II. Discussion[3]

The District Court correctly found that Manuel and Horton are entitled to absolute immunity for their actions prior to carrying out the Custody Order. Officials participating in child welfare proceedings in a prosecutorial capacity are protected by absolute immunity. *See B.S.*, 704 F.3d at 261–65. Manuel contributed to the decision to file a dependency petition and later sought a Custody Order. Horton prepared the petition, participated in the hearing, and relayed information critical to the decision to request a Custody Order. The actions prior to the Custody Order's issuance were prosecutorial in nature and thus they were covered by absolute immunity.[4]

The District Court also correctly held that Horton and Manuel have qualified immunity for their actions after the Custody Order issued. That doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

[4] That the dependency petition Horton prepared contains immaterial inaccuracies does not alter the prosecutorial nature of her conduct.

would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Guests assert that Horton and Manuel violated their clearly established constitutional rights because they removed the children "[w]ithout facts giving rise to a reasonable suspicion of injury or imminent danger." Opening Br. at 19. We have already held, however, that this articulation is "too broad for purposes of qualified immunity[.]" *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016). We must analyze specifically whether, under the circumstances presented, "the law was so clearly established at t[he] time [of removal that] a reasonable caseworker would have understood that temporarily removing a child . . . would violate substantive due process." *Id*. at 170. Yet we have never upheld a substantive due process violation in a case of temporary removal at all, let alone where caseworkers reasonably believed they were following a court order. *See id*. So, the District Court correctly found Horton and Manuel have qualified immunity for their actions during and after the execution of the Custody Order.

To win their claim against the County, the Guests must prove that its "policy or custom" was the "moving force" in depriving their constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The Guests allege their children were wrongfully removed because of a Children's Office's policy that required its caseworkers to execute the Custody Order even though they lacked reasonable suspicion that the children were being abused or in imminent danger. We have held that "a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or

7

is in imminent danger of abuse." *Croft v. Westmoreland Cnty. Child. & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997). But here, Children's Office caseworkers had a reasonable suspicion of abuse when they removed the children. The dependency petition details two dozen police visits to the Guest residence, past episodes of domestic violence, a previous charge of endangering the welfare of children, and that the Children's Office received seven referrals concerning the Guests. The Family Court found the dependency petition's allegations to be supported by clear and convincing evidence. We thus perceive no constitutional rights violated by the children's removal and affirm the judgment of the District Court in the County's favor.