PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3554
_____

HEIKO GOLDENSTEIN,

Appellant

v.

REPOSSESSORS INC.; CHAD LATVAAHO;
SHADY OAK ENTERPRISES INC., doing business as
Premier Finance Adjusters; PHILIP J. HOURICAN;
WILLIAM MCKIBBIN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 5-13-cv-02797)
District Judge:  Honorable James Knoll Gardner
_____

Argued:  May 20, 2015

Before:  GREENAWAY, JR., KRAUSE, and GREENBERG,
Circuit Judges

(Filed: March 10, 2016)
_____

Robert F. Salvin, Esq. (Argued)
300 Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004

    *Counsel for Appellant*


Neal A. Thakkar, Esq. (Argued)
Sweeney & Sheehan
216 Haddon Avenue
Suite 500
Westmont, NJ 08108

William R. Hourican, Esq.
527 Swede Street
Norristown, PA 19401

    *Counsel for Appellees*

———————

OPINION OF THE COURT
———————

KRAUSE, Circuit Judge

After he defaulted on a $1,000 loan and his car was repossessed, Appellant Heiko Goldenstein brought suit against Appellees Repossessors, Inc. and Shady Oak Enterprises, Inc., d/b/a Premier Finance Adjusters and their individual owners, alleging the repossession was unlawful and seeking treble damages, attorney's fees, and costs.

2

Specifically, Goldenstein claimed violations of various state and federal consumer protection statutes, as well as the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Because we conclude that the District Court erred in the basis on which it granted summary judgment against Goldenstein on his RICO claim and two of his state law claims, we will affirm in part and reverse and remand in part for the District Court's further consideration of those claims.

## I.  FACTUAL AND PROCEDURAL HISTORY[1]

In April 2012, Goldenstein, a resident of Pennsylvania, obtained a $1,000 online loan from Sovereign Lending Solutions, LLC, d/b/a Title Loan America. As a consumer lending company wholly owned by the Lac Vieux Desert Band of Lake Superior Chippewa Indians and incorporated under Chippewa tribal law, Sovereign was authorized to issue loans secured by vehicles at interest rates far greater than permitted under Pennsylvania law. App. vol. 2, 123, 264. Goldenstein pledged his car as collateral and was charged 250 percent interest for his loan.[2]

---

[1] Unless otherwise noted, the background is adopted from the facts as found by the District Court in its opinion. *See Goldenstein v. Repossessors, Inc.*, No. 13-cv-02797, 2014 U.S. Dist. LEXIS 97002 (E.D. Pa. July 17, 2014).

[2] The Appellees do not contest Goldenstein's calculations of the interest rate, nor do they dispute that the rate was in excess of what is permitted by Pennsylvania law. Although Appellees argued before the District Court that Goldenstein could not support his claims because he could

Accounting for the interest due, Sovereign, after deducting a $50 transfer fee and wiring the remaining $950 of the loan to Goldenstein's bank account, withdrew monthly installments of $207.90 from Goldenstein's bank account in June 2012 and again in July 2012. The District Court found for the purposes of summary judgment that Goldenstein removed his funds from the account because he did not recognize the account activity on his bank statements. As a result, when Sovereign attempted to collect a third installment payment in August 2012, it was rejected for insufficient funds. Sovereign then contracted with Repossessors, Inc. to forfeit Goldenstein's collateral, and Repossessors, Inc., in turn, contracted with Shady Oak Enterprises, Inc., d/b/a Premier Finance Adjusters ("Premier"), which took possession of Goldenstein's car. When Goldenstein attempted to recover his car a few days later, App. vol. 2, 45, Premier informed Goldenstein that his payment would not be accepted nor his car returned unless he signed release documents. After conferring with his attorney, Goldenstein paid Premier $2,393 ($2,143 to satisfy the loan and $250 in repossession fees) and signed the releases.

Goldenstein filed suit in the United States District Court for the Eastern District of Pennsylvania in a three-count complaint. In the first count, Goldenstein claimed violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and Pennsylvania's Fair Credit Extension Uniformity Act ("PFCEUA"), 73 Pa. Stat. and Cons. Stat. Ann. §§ 2270.1–2270.6 based in part on alleged

_____

not produce a copy of his loan document, they do not renew that argument here.

violations of Pennsylvania's Uniform Commercial Code ("UCC"), 13 Pa. Cons. Stat. §§ 1101–9710.[3]  The FDCPA claim was premised on the notion that Appellees had no present right to possession of Goldenstein's car because the loan was usurious under Pennsylvania law.  As for the PFCEUA and UCC claims, Goldenstein alleged that the Appellees made "false, deceptive, or misleading representations" and engaged in "unfair or unconscionable means of debt collection" when, among other things, they required Goldenstein to sign the releases before recovering his car.  App. vol. 2, 8.  The second and third counts of the complaint claimed that Repossessors, Inc. and Premier, both individually and jointly, constituted a RICO "enterprise" and that the repossession of Goldenstein's car involved the "collection of unlawful debt," in violation of 18 U.S.C. § 1962(c), and gave rise to a RICO conspiracy, in violation of 18 U.S.C. § 1962(d).  App. vol. 2, 9-12.

The District Court granted Appellees' motion for summary judgment and entered judgment against Goldenstein on all claims.  *Goldenstein v. Repossessors, Inc.*, No. 13-cv-02797, 2014 U.S. Dist. LEXIS 97002, at *2 (E.D. Pa. July 17, 2014).  As to the FDCPA claim, the District Court held there was no violation because the Appellees had a right to possess the car as collateral for the unpaid loan.  *Id.* at *19-22.  As to

---

[3] While the alleged UCC violation is not identified as a separate claim in the complaint, it is referenced within the allegations for violations of the PFCEUA, *see* App. vol. 2, 8 (Compl. ¶¶ 44(b), 45(b)), and more clearly outlined in Goldenstein's Memorandum of Law in Opposition to the Motion for Summary Judgment, *see* Mem. Law Opp'n Mot. Summ. J. 13-15, ECF No. 40-1.

the RICO claim, the District Court held that the repossession of collateral could not constitute the "collection of unlawful debt" as a matter of law; it therefore did not address any other element of the RICO claim. *Id.* at \*22-23. Nor did the District Court address Goldenstein's claims for violations of the PFCEUA and the UCC relating to the releases.[4] This appeal followed.

---

[4] The District Court reasoned erroneously that the "FDCPA and PFCEUA claims share identical elements and will be analyzed as one claim for purposes of this Opinion." *Goldenstein*, 2014 U.S. Dist. LEXIS 97002, at \*16 n.36. Giving the District Court the benefit of the doubt, it may have taken this approach because both of those claims were included in Count One of the complaint. As discussed in more detail below, however, the PFCEUA claim is distinct from the FDCPA claim and is predicated not on the alleged absence of Premier's present right to possession of the car but on alleged misrepresentations related to the releases Premier required Goldenstein to sign in order to recover his car. The District Court did not engage the merits of this claim or Appellees' arguments that the releases barred this litigation. Raising additional concerns in this Court's mind about the care with which the District Court considered Goldenstein's claims, the District Court granted summary judgment on the PFCEUA and UCC claims although Appellees did not specifically argue those claims in their motion for summary judgment and proceeded to state in its opinion that it was granting summary judgment as to Count One and Count Two of the complaint without making any mention of Count Three, the RICO conspiracy claim. *Id.* at \*22-23. Nonetheless, the District Court granted judgment against

6

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review of a district court's grant of summary judgment.  *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Horn v. Thoratec Corp.*, 376 F.3d 163, 165 (3d Cir. 2004)).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted).  When deciding a motion for summary judgment, "[a]ll reasonable inferences from the record must be drawn in favor of the nonmoving party" and the court "may not weigh the evidence or assess credibility."  *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir. 2005) (citations omitted).

In a motion for summary judgment, it is initially the moving party's burden to "demonstrate the absence of a genuine [dispute] of material fact."  *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 250 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conversely, "where a non-moving party fails sufficiently to establish the existence of an essential element

Goldenstein "on all claims" and closed the case.  *Id.* at *23-25.

of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

## III.   DISCUSSION

We agree with the District Court that, although the loan may have been usurious under Pennsylvania law, Appellees nonetheless had a present right to possession of Goldenstein's car and their repossession of it therefore did not violate the FDCPA.   We cannot agree, however, that forfeiture of collateral cannot amount to the "collection of unlawful debt" under the RICO statute.   And as the District Court did not address the merits of Goldenstein's claims alleging violations of the PFCEUA and the UCC, we decline to do so in the first instance.   We address these issues in turn.

### A.   Goldenstein's FDCPA Claim

Goldenstein raises two challenges to the District Court's holding that, because Goldenstein defaulted on his loan, Appellees had a present right to possession of his car as collateral and therefore did not violate the FDCPA.

First, he contends that no present right to possession could attach to his car because the loan it secured was made at a usurious rate of interest in violation of Pennsylvania's Loan Interest and Protection Law ("LIPL"), 41 Pa. Stat. and Cons. Stat. Ann. § 201.   Even when the interest rate is usurious, however, the LIPL does not void the entire loan or the legal interest, nor does it make it illegal for a lender to collect an unpaid debt.   Instead, the LIPL only makes

8

voidable "the interest specified beyond the lawful rate," *Pa. Dep't of Banking v. NCAS of Del., LLC*, 995 A.2d 422, 440 (Pa. Commw. Ct. 2010) (emphasis omitted) (quoting *Mulcahy v. Loftus*, 267 A.2d, 872, 873 (Pa. 1970)), and Pennsylvania law expressly permits a secured party to "take possession of the collateral" after default, "without judicial process if it proceeds without breach of the peace," 13 Pa. Cons. Stat. § 9609. Thus, having admittedly defaulted on his loan—including removing the funds from his bank account without further communication with the lender and failing to make three monthly payments before his car was repossessed—Goldenstein cannot now contest Sovereign's right to repossess the collateral he posted in the event of just such a default.

Second, Goldenstein argues that the repossession was unlawful because his arrearage—assuming he had been accruing interest at a six percent rate as permitted by Pennsylvania law and deducting Sovereign's first two deductions from his bank account from his overall balance—would have been a mere $9.60, and his failure to make this *de minimis* payment could not constitute a material breach of the loan contract. That argument, however, finds no support in the LIPL. While that statute provides important protections to borrowers who fall victim to usurious loans, it does not empower borrowers to recalculate what they owe by construing interest paid in excess of the legal rate as paid principal, nor does it preclude lenders from repossessing the collateral on a defaulted loan. *See* 13 Pa. Cons. Stat. § 9609; *Pa. Dep't of Banking*, 995 A.2d at 440.

The District Court thus correctly concluded that the Appellees had a present right to possession and did not violate the FDCPA when they repossessed Goldenstein's car.

9

### B.    Goldenstein's RICO Claim

#### 1.    The Collection of Unlawful Debt

RICO makes it unlawful for a person associated with a RICO "enterprise" to participate in the conduct of such enterprise "through a pattern of racketeering activity or collection of unlawful debt."[5]   18 U.S.C. § 1962(c).   The District Court dismissed Goldenstein's RICO claim by summarily stating "[i]t is well-settled by this court that the repossession of collateral is clearly distinguishable from the collection of unlawful debt and does not give rise to a RICO claim," and citing to the opinion of another District Judge in the Eastern District of Pennsylvania who had reached that conclusion.  *Goldenstein*, 2014 U.S. Dist. LEXIS 97002, at *23 (citing *Collins v. Siani's Salvage, LLC*, No. 13-3044, 2014 U.S. Dist. LEXIS 39930, at *5 (E.D. Pa. Mar. 26, 2014)).    Indeed, two judges in the Eastern District of Pennsylvania, in addition to the District Judge here, have held that when a repossession company repossesses a car as collateral for an unpaid debt, the repossession company "[i]s

---

[5] While ordinarily a RICO claim requires a plaintiff to prove the defendants participated in the enterprise "through a pattern of racketeering activity," *United States v. Console*, 13 F.3d 641, 652-53 (3d Cir. 1993) (citation and internal quotation marks omitted), the "collection of unlawful debt" is an act native to the RICO statute and does not require a pattern of activities to constitute a violation, *see United States v. Vastola*, 899 F.2d 211, 228 n.21 (3d Cir. 1990) (holding that a single collection satisfies the requirements for the "collection of unlawful debt" and no further pattern or predicate act need be shown).

10

not collecting the debt that [the lender] alleged it [i]s owed under the loan agreement. Rather, [the repossession company] [i]s repossessing the collateral for that debt." *Collins*, 2014 U.S. Dist. LEXIS 39930, at \*14 (quoting *Gonzalez v. DRS Towing*, LLC, No. 12-cv-05508, at 7 (E.D. Pa. Feb. 28, 2013)). That position, however, is far from settled.

No Court of Appeals has yet addressed this question; nor are the District Judges unanimous, even in the Eastern District of Pennsylvania. On the contrary, in a thoughtful and well-reasoned opinion in *Gregoria v. Total Asset Recovery, Inc.*, No. 12-4315, 2015 U.S. Dist. LEXIS 1818 (E.D. Pa. Jan. 8, 2015), Judge Lawrence F. Stengel held that the distinction between the collection of debt and the collection of collateral for a debt is a "distinction without a difference," and observed that when a lender repossesses a debtor's car as collateral for a loan it does so "to liquidate the collateral to satisfy the unpaid balance of [the] loan." *Id.* at \*18 (internal quotation marks omitted). Citing the "broad construction [it] must give the RICO statute," Judge Stengel recognized that "[w]hether the [lender] collected the car or cash, the purpose of the collection was to satisfy the debt." *Id.* at \*18 & n.11.

We agree with the reasoning in *Gregoria*. Nothing in RICO suggests that Congress intended to limit its prohibition on the "collection of unlawful debt" to the seizure of cash and to exclude the forfeiture of collateral used to secure unlawful debt. Quite the opposite. The statute defines "unlawful debt" as "a debt (A) incurred . . . which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or

11

Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6). Thus, the prohibition on the "collection of unlawful debt" under the statute encompasses efforts to collect on a usurious loan, without distinguishing whether the collection is cash or collateral; in either case the defendants' actions effect the collection of the unlawful debt. *Cf. United States v. Eufrasio*, 935 F.2d 553, 576 (3d Cir. 1991) (holding that "a single act which would tend to induce another to repay on an unlawful debt incurred in the business of lending money" is sufficient for the predicate act, and there need not be "[a]n actual exchange of cash").

Goldenstein's is a case in point. Premier repossessed Goldenstein's car for one of two purposes: either Goldenstein would pay off the loan for the return of his car or the car would be liquidated with the proceeds used to pay off that loan. Either way, the debt would be collected and the usurious loan discharged. It so happens that Goldenstein opted to pay so that Premier collected the outstanding loan balance (and then some) in cash. Thus, the collection of collateral and the "collection of unlawful debt" in this very case was a "distinction without a difference." *See Gregoria*, 2015 U.S. Dist. LEXIS 1818 at *18.

This practical reality, along with the Supreme Court's instruction that RICO should "be read broadly," *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985), and its clarification that Congress intended RICO to reach both legitimate and illegitimate enterprises, *id.* at 499-500; *United States v. Turkette*, 452 U.S. 576, 584-85 (1981), confirm that RICO's prohibition on the "collection of unlawful debt" can reach even a legitimate repossession company that forfeits on collateral for a usurious loan—assuming, that is, that the

12

plaintiff can establish the other elements of the violation. To that subject, we now turn.

### 2. The Existence of a RICO Enterprise

Here, Appellees urge that Goldenstein cannot satisfy other RICO elements, specifically that he cannot prove the existence of an "enterprise" because Appellees consisted of an "*ad hoc* group of entities that were connected solely for the purpose of repossessing plaintiff's vehicle," Appellees' Br. 27, and that he cannot establish that Appellees possessed the *mens rea* they argue is required by RICO. The District Court did not address these arguments, which is unsurprising, given that, as Appellees conceded at oral argument, they did not raise them in their motion for summary judgment. *See* Oral Argument at 31:17–32:10 (argued May 20, 2015).

As a general rule, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). While we may make exceptions "when the factual record is developed and the issues provide purely legal questions, upon which an appellate court exercises plenary review," we will remand "when the issue to be addressed is not a purely legal question," requiring either "the exercise of discretion or fact finding." *Hudson United Bank v. LiTenda Mort. Corp.*, 142 F.3d 151, 159 (3d Cir. 1998).

Here, the record is not sufficiently developed for us to consider the merits of the parties' arguments as to the alleged enterprise or *mens rea*. In light of Appellees' failure to raise these arguments until their responsive brief on appeal, Goldenstein did not have the opportunity to supplement the factual record on those points, nor to fully brief them for us or

13

the District Court. Under these circumstances, we will leave these issues for the District Court to consider in the first instance on remand.

## C. Goldenstein's PFCEUA and UCC Claim

The District Court granted summary judgment against Goldenstein on his PFCEUA and UCC claims without addressing the substance of the PFCEUA claim, without even mentioning the UCC claim, and despite the fact that Appellees did not argue those claims in their motion for summary judgment.[6] This too, we conclude, was error.

As to the PFCEUA, the District Court granted summary judgment on the ground that there was no FDCPA violation based on the Appellees' present right to possession. In so doing, the District Court appears to have misapprehended the substance of Goldenstein's PFCEUA claim. Consistent with his argument on appeal, Goldenstein urged before the District Court that the PFCEUA's broad definition of "debt collector" encompasses repossession companies, *see* 73 Pa. Stat. and Cons. Stat. Ann. § 2270.3; that the PFCEUA states that "[i]t shall constitute an unfair or

---

[6] A district court, of course, may grant summary judgment *sua sponte* on claims not raised by the moving party where, as here, the non-moving party is on notice and given an opportunity to respond. *See Celotex Corp.*, 477 U.S. at 326; *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004). Where it does so without acknowledging or addressing the claims in question, however, the court creates uncertainty as to whether it considered the claims on the merits and hinders our ability to conduct meaningful appellate review.

deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the [FDCPA]," 73 Pa. Stat. and Cons. Stat. Ann. § 2270.4; and that the FDCPA, in turn, prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e. *See* Mem. Law Opp'n Mot. Summ. J. 15, ECF No. 40-1. Thus, according to Goldenstein, Premier's use of "false, deceptive, or misleading representation[s]" to coerce Goldenstein to sign the releases to recover his car violated the PFCEUA through the § 1692e provision of the FDCPA. As the District Court did not engage this argument or the alleged UCC violation, these claims should also be addressed by the District Court on remand.

## IV. CONCLUSION

For the foregoing reasons, the District Court erred in granting summary judgment in favor of the Appellees for alleged violations of RICO, the PFCEUA, and the UCC, and its judgment, to that extent, will be vacated and the case remanded for proceedings consistent with this opinion.

15