NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2061

_____

JOSEPH MRAZEK

v.

STAFFORD TOWNSHIP;
POLICE CHIEF JOSEPH GIBERSON, In his Individual and Official Capacities;
JOHN DOES 1-5, Individually and in their official capacity

Police Chief Joseph Giberson,
                                        Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 3-13-cv-01091)
District Judge: Honorable Freda L. Wolfson

_____

Submitted under Third Circuit L.A.R. 34.1(a)
on November 15, 2017

Before: CHAGARES, VANASKIE, and FUENTES *Circuit Judges*

(Opinion filed: August 1, 2018)

_____

O P I N I O N[*]

_____

   [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FUENTES, *Circuit Judge*:

Defendant-Appellant Joseph Giberson, the now-retired Police Chief of Stafford Township, presided over the promotion process for candidates for promotion to police sergeant. Among these candidates was Plaintiff-Appellee Joseph Mrazek, who also served as president of the police union. Mrazek sued Giberson, among others, for retaliating against him in the promotion process for his union affiliation.

Denying summary judgment on the issue of qualified immunity, the District Court held that Mrazek's right to be free from a public official "negatively influencing a police promotion process solely because of [his] union-related activities (resulting in his being passed over for a promotion)" was clearly established.[1] For the following reasons, we will affirm.

I.

Because we write only for the parties, we include only those facts most necessary to the disposition of the case.

Candidates for promotion to sergeant, among other ranks, were evaluated in a two-part process that included both objective and subjective components. Based on this process, a certain portion of candidates were ranked and were promoted in that order as openings arose. In total, the objective component of the evaluation comprised 80 percent of a candidate's evaluation and the subjective component comprised 20 percent. The

---

[1] *Mrazek v. Stafford Township, et al..*, No. CV 13-1091, 2017 WL 1788655, at \*4 (D.N.J. May 5, 2017) (hereinafter *Mrazek II*).

subjective component contained two equally weighted scores: 10 percent of the candidate's evaluation derived from an evaluation conducted by Giberson alone and the remaining 10 percent derived from the "Supervisory Roundtable," a discussion of the department's supervisory employees that results in a ranking collectively arrived at by the participants. Giberson was among the participants in the Supervisory Roundtable.

Mrazek, a police officer and President of the local Police Benevolent Association Union, was a candidate for the 2012/2013 promotional exam for the rank of sergeant. The promotion exam consisted of two components, Phase I and Phase II. Both phases included parts of the objective component, but only Phase II contained the subjective component described above. Phase I consisted of a multiple choice exam that was independently graded by the International Association of Chiefs of Police. It also included half of a candidate's "seniority score." Only the top "50 percentile" of officers who completed Phase I could progress to Phase II, which included assessment of oral and written responses as well as the subjective component of the exam.[2] In part due to ranking last in the subjective component of the exam, Mrazek was ranked seventh of eleven in the promotion list and, as of the briefing of this case, was not promoted.

The District Court held that there were disputed issues of material fact as to Giberson's "substantial motivating factor in scoring Mrazek last during the Roundtable and the Chief's Review phases of the Exam."[3] All we must determine is whether Mrazek's right was clearly established: whether, as the District Court phrased it: "a

---

[2] A513.
[3] *Mrazek I*, 2016 WL 5417197, at *15.

reasonable public official could have recognized that negatively influencing a police promotion process solely because of an officer candidate's union related activities (resulting in his being passed over for a promotion) would violate the officer's First Amendment freedom to associate rights" in January 2013, when Giberson's conduct occurred.[4]

## II.

The District Court had jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. We have appellate jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine.

The collateral order doctrine is an exception to appellate review's usual requirement of a final decision. We will exercise jurisdiction over a non-final order that "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment."[5] "[A] denial of qualified immunity that turns on an issue of law—rather than a factual dispute—falls within the collateral order doctrine."[6]

Here, the only issue before us is whether Mrazek's right as recognized by the District Court was clearly established at the time of Giberson's disputed conduct. This question is purely legal, and the collateral order doctrine applies.

---

[4] *Mrazek II*, 2017 WL 1788655, at *4.
[5] *Mammaro v. N.J. Div. of Child Prot. and Permanency*, 814 F.3d 164, 168 (3d Cir. 2016) (quoting *Will v. Hallock*, 546 U.S. 345, 349 (2006)).
[6] *Mammaro*, 814 F.3d at 168 (quoting *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004)).

III.

We exercise plenary review over a grant of summary judgment.[7]  We apply the same standard of the District Court,[8] and draw all reasonable inferences from the record in favor of the non-moving party.[9]  We also exercise plenary review of the legal grounds underpinning a claim of qualified immunity.[10]

IV.

Qualified immunity is an affirmative defense designed to "protect government officials from insubstantial claims in order to 'shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"[11]  "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"[12]  It prohibits a plaintiff from recovering money damages against a federal or state official unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[13]  Only the second prong of this analysis is before us here.

For a right to be clearly established, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendants on notice that

---

[7] *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018).
[8] *Id.*
[9] *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).
[10] *Karns*, 879 F.3d at 512.
[11] *Mammaro*, 814 F.3d at 168 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).
[12] *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[13] *Al-Kidd*, 563 U.S. at 735 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

his or her conduct is constitutionally prohibited."[14] The contours of the right must be "sufficiently clear that 'a reasonable officer would understand that what he is doing violates that right.'"[15] The precise conduct at issue need not previously be held to be unlawful provided that the contours of the right are sufficiently clear.[16] The Supreme Court has made clear that "officials can still be on notice that their conduct violates established law even in novel factual circumstances."[17]

The District Court correctly concluded that Mrazek's right to be free of a public official negatively influencing a police promotion process solely because of Mrazek's union-related activities, resulting in his non-promotion, was clearly established in January 2013.

That the rights afforded by the First Amendment protect the pursuit of affiliation with a union is clearly established in law.[18] Similarly, the First Amendment protects the right of associations, such as unions, "to engage in advocacy on behalf of their

---

[14] *Mammaro*, 814 F.3d at 169 (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)).

[15] *Kedra v. Schroeter*, 876 F.3d 424, 449–50 (3d Cir. 2017) (quoting *Rivas v. City of Passaic*, 365 F.3d 181, 200 (3d Cir. 2004)).

[16] *Kedra*, 876 F.3d at 450 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[17] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[18] *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968) ("In sum, we hold that, in a case such as this, absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment."); *Shelton v. Tucker*, 364 U.S. 479, 485–86 (1960) ("It is not disputed that to compel a teacher to disclose his every associational tie is to impair that teacher's right of free association, a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society.").

members."[19]  "The government is prohibited from infringing upon these guarantees either by a general prohibition against certain forms of advocacy . . . or by imposing sanctions for the expression of particular views it opposes."[20]

For a quarter-century prior to the conduct in dispute, this Court has held that when public employers take adverse employment actions such as "retaliatory discharges, transfers, letters of reprimand, . . . demotions accompanied by transfers, . . . [and] retaliatory demotions" against employees, those public officials violate the clearly established rights of their employees.[21]

It is equally established by Supreme Court precedent that even though a public employee has no legal entitlement to promotion, the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."[22]  It held in *Rutan v. Republican Party of Illinois* that "promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees."[23] Although *Rutan* dealt with partisan political affiliation and not union affiliation, the clearly established right to associate and affiliate with a union derives from the same source as the First Amendment protection of the right to affiliate with a union.  The

---

[19] *Smith v. Ark. State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979) (citing *Nat'l Assoc. for Advancement of Colored People v. Button*, 371 U.S. 415 (1963)).
[20] *Smith*, 441 U.S. at 464 (citations omitted).
[21] *Bennis v. Gable*, 823 F.2d 723, 733 (3d Cir. 1987).
[22] *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72 (1990) (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)).
[23] *Rutan*, 497 U.S. at 75.

following propositions of law are thus clearly established: union affiliation is protected from infringement under the First Amendment; and a retaliatory decision not to promote an employee on a protected basis can constitute infringement of First Amendment rights.

These well-established precedents are supported by holdings from the Courts of Appeals.[24] *McGreevey v. Stroup*, in particular, is instructive: in that case, this Court held that giving an employee an unsatisfactory employment rating violated the employee's clearly established First Amendment right, if it was proven that the rating was motivated by retaliation for speaking on a matter of public concern.[25] Although the employee was eventually terminated, the Court's holding concerned the rating alone, and left it to a jury to determine "whether Plaintiff's constitutionally protected activity was a substantial or motivating factor in Defendant's decision [to give the low rating]."[26]

The right at issue here synthesizes the precedents of *McGreevey* and *Rutan*: Mrazek claims that Giberson's negative employment rating at a critical juncture led to Mrazek being passed over for promotion. In light of these clearly established precedents, a reasonable public official could—and should—have recognized that negatively influencing a police promotion process solely because of an officer candidate's union-related activities (resulting in his being passed over for a promotion) would violate the

---

[24] *See, e.g.*, *McGreevey v. Stroup*, 413 F.3d 359 (3d Cir. 2005) (holding that retaliatory unsatisfactory employment rating infringed on employee's First Amendment rights); *Shrum v. City of Coweta, Okla.*, 449 F.3d 1132 (10th Cir. 2006) (holding that retaliatory changes in work schedule infringed on employee's First Amendment rights).
[25] *McGreevey*, 413 F.3d at 366–67.
[26] *Id.* at 365–66.

officer's First Amendment freedom to associate rights in January 2013, when Giberson's conduct occurred.[27]

## V.

For the foregoing reasons, we will affirm the District Court.

---

[27] *See Mrazek II*, 2017 WL 1788655, at *4.