NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1479
_____

CRYSTAL GRIMSLEY,
Individually & as Administratrix of the Estate of
Rickie L. Grimsley, Deceased,
Appellant

v.

THE MANITOWOC COMPANY INC;
MANITOWOC CRANES COMPANIES, LLC;
MANITOWOC CRANE, LLC;
GROVE U.S., LLC; KYLE MELLOTT
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-15-cv-01275)
District Judge: Honorable John E Jones, III
_____

Argued October 2, 2019

Before: SHWARTZ, FUENTES and FISHER, *Circuit Judges*.

(Filed: November 7, 2019)

Robert F. Englert *[ARGUED]*
RFE Law Firm
105 Rutgers Avenue
P.O. Box 249
Swarthmore, PA 19081
    *Counsel for Appellant*

Dennis P. Herbert *[ARGUED]*
Stephen D. Menard

Joseph P. Trabucco, III
Trabucco & Menard
600 West Germantown Pike
Suite 400
Plymouth Meeting, PA 19462
        *Counsel for Appellees Manitowoc Co. Inc., Manitowoc Cranes LLC., Manitowoc Crane Co. LLC.*

Stephanie L. Hersperger *[ARGUED]*
Pion Nerone Girman Winslow & Smith
240 North 3rd Street
Payne Shoemaker Building, 10th Floor
Harrisburg, PA 17101

John T. Pion
Pion Nerone Girman Winslow & Smith
1500 One Gateway Center
420 Fort Duquesne Boulevard
Pittsburgh, PA 15222
        *Counsel for Appellees Grove United States and Kyle Mellott*

_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

Rickie Lee Grimsley ("Decedent") died in a workplace accident after becoming trapped between two industrial cranes. Since his death, his wife, Crystal Grimsley, has received workers' compensation death benefits. Mrs. Grimsley also filed suit asserting claims of, *inter alia*, negligence against the Decedent's fellow employee Kyle Mellott and

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

various corporate entities, including The Manitowoc Company, Inc. and its subsidiary, Grove U.S. L.L.C. The District Court granted summary judgment in favor of Grove and Mellott based on Pennsylvania Workers' Compensation Act ("PWCA") immunity and in favor of Manitowoc for failure to state a claim of negligence. This appeal followed. We will affirm.[1]

First, the District Court did not err in granting summary judgment in favor of Grove and Mellott because Grove was the Decedent's employer and, therefore, it and its employees are entitled to immunity under the PWCA. *See* 77 Pa. Stat. §§ 72, 481(a). The PWCA defines "employer" "to be synonymous with master." *Id.* § 21. Thus, courts turn to the common law test of control to determine the relation of employer and employee under the PWCA. *See Kiehl v. Action Mfg. Co.*, 535 A.2d 571, 573 (Pa. 1987). When the case involves a corporate parent-subsidiary relationship, "the question of control can properly be resolved only by a consideration of the functions performed by every interested party—each corporation and the injured employee—in addition to other indicia of control." *Mohan v. Publicker Indus., Inc.*, 222 A.2d 876, 879 (Pa. 1966). "If the corporate functions are distinct and in the performance of his duties, the employee is shown to have acted in furtherance of the functions of only one, or essentially one of the corporations, then that

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We exercise plenary review of a district court's grant of summary judgment." *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).

corporation will be deemed his employer." *Id.* Only when "a functional analysis does not provide a clear-cut answer" do we "turn to other indicia of the right to control." *Joyce v. Super Fresh Food Mkts., Inc.*, 815 F.2d 943, 946–47 (3d Cir. 1987).

Here, Mrs. Grimsley fails to create a genuine dispute of material fact as to the functions of Manitowoc and Grove. Mark Klaiber, the Defendants' corporate designee, testified that Manitowoc "does not manufacture or produce anything" but functions "as a holding company" or "an umbrella organization simply for the ownership" of several different product lines. Supp. App. 91. Klaiber stated that after Manitowoc acquired Grove, it took over administrative functions, such as "tax and accounting and payroll." Supp. App. 92. By contrast, Grove "managed all of the operations [including] engineering, designing, testing, manufacture, [and] sales" for the cranes produced at Shady Grove. Supp. App. 91. Although Manitowoc paid employees' wages, it charged the costs back to Grove. In addition, Grove's Environmental Health and Safety Manager attested that "[t]he safety policies and procedures in place at the [Shady Grove facility] at the time of [the Decedent's] accident were independently developed, prepared, implemented and enforced by Grove . . . and not by [Manitowoc]." Supp. App. 897–98.

Mrs. Grimsley argues that Manitowoc's functions included "designing, manufacturing, and selling" its cranes, and says Grove functioned as nothing more than "a real estate holding company" or "an accounting write off for operations directed by" Manitowoc. Appellant Br. 43, 50–51. Mrs. Grimsley's evidence that Manitowoc's logo,

4

name, and copyright appear on various signs and documents is consistent, however, with Manitowoc's function as an umbrella organization. As Klaiber testified, "[W]e want all of the products under that umbrella organization of The Manitowoc Company, Inc. to be associated with and affiliated with Manitowoc as its name." Supp. App. 97. Furthermore, although Manitowoc publicly represented that it owned manufacturing space at Shady Grove, these mere representations do not call into question the fact that, according to the deed, Grove owns the Shady Grove facility.

After establishing the functions of the various entities, we conclude that the Decedent's work furthered the functions of Grove. The Decedent inspected and prepared cranes for sale at the Shady Grove facility, which was owned and operated by Grove. Although his work may have involved filling out documents that included the Manitowoc logo, his work furthered Grove's function of manufacturing and selling cranes far more directly than it furthered Manitowoc's function as an umbrella organization that handled certain administrative matters. *See Kiehl*, 535 A.2d at 574 (employee furthered functions of subsidiary even though his work also indirectly benefitted parent). Because the functional analysis conclusively establishes that Grove, and not Manitowoc, was the Decedent's employer, we do not consider other indicia of the right to control. *See Joyce*, 815 F.2d at 946–47.

Alternatively, Mrs. Grimsley argues that Manitowoc admitted it was the Decedent's employer because it failed to give notice that temporary compensation would stop within

5

ninety days of initiating payments pursuant to a Notice of Temporary Compensation Payable ("NTCP").[2] The NTCP, however, identifies "Grove Cranes Worldwide" as the Decedent's employer, lists the address for the Shady Grove facility, and omits a Federal Employer Identification Number. Mrs. Grimsley fails to offer evidence that Manitowoc and "Grove Cranes Worldwide" are the same entity, and Klaiber testified that the use of the name on the form was "sloppy reporting" because "there is no such entity." Supp. App. 114. Thus, the District Court did not err in granting summary judgment to Grove and Mellott based on PWCA immunity.[3]

Second, the District Court did not err in granting summary judgment in favor of Manitowoc because Mrs. Grimsley fails to state a claim of negligence against Manitowoc. Under Pennsylvania law, an employee of a subsidiary may sue the parent for its independent acts of negligence. *Kiehl*, 535 A.2d at 574–75. Manitowoc, however, did not owe a duty to the Decedent. Manitowoc did not owe a duty as the owner and operator of the Shady Grove facility because, as noted above, Grove in fact owned the facility.

---

[2] Under the PWCA, an employer must "promptly" investigate a workplace injury and pay compensation. 77 Pa. Stat. § 717.1(a). An employer may initiate such payment "without admitting liability pursuant to a [NTCP]" for up to ninety days. *Id.* §§ 717.1(d)(1), (d)(2)(ii). If an employer does not notify the employee within ninety days that it will stop making temporary payments, it "shall be deemed to have admitted liability." *Id.* §§ 717.1(d)(5), (6).

[3] Mrs. Grimsley's judicial estoppel argument also fails. Judicial estoppel is premised on an assault to the integrity of the court. She presents no evidence that the Defendants advanced irreconcilably inconsistent positions to mislead the court. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003).

Nor did Manitowoc undertake a duty by issuing safety standards to govern the Shady Grove facility. Although a parent corporation may be liable to the employees of its subsidiary for failing to provide a safe work environment if it undertook such a duty, *see Cantwell v. Allegheny County*, 483 A.2d 1350, 1353 & n.4 (Pa. 1984), uncontroverted evidence shows that Grove developed and implemented the policies used at the Shady Grove facility.

Furthermore, Manitowoc may not be held directly liable for any failure to adopt or enforce safety procedures. Although Mrs. Grimsley's engineering expert concluded that Manitowoc owed a duty under industry standards, that opinion was premised on the assumption that "Manitowoc controlled the work that was being performed at the time of the incident." D. Ct. Docket No. 118-42, at 20. The question of who controlled the work at Shady Grove is a legal one, and the expert's report cannot establish a duty by opining on a legal question. Thus, the District Court did not err in granting summary judgment in favor of Manitowoc.

For the reasons set forth above, we will affirm the District Court's judgment.