**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3433
_____

FREDERICK NAHAS, M.D.,
Appellant

v.

SHORE MEDICAL CENTER; STEVEN P. NACHTIGALL;
JEFFREY GOSIN; PEYTON DEARBORN; PETER JUNGBLUT;
MEDICAL EXECUTIVE COMMITTEE; LEONARD GALLER
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-13-cv-06537)
Honorable Robert B. Kugler, U.S. District Judge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 17, 2020

Before: KRAUSE, RESTREPO, and BIBAS, *Circuit Judges*

(Opinion filed: September 18, 2020)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Frederick Nahas appeals the District Court's summary judgment in favor of his employer, Shore Medical Center, its Medical Executive Committee, and various medical officers (collectively Shore Medical), on his claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and 42 U.S.C. § 1981, as well as the dismissal of his breach of contract claim under state law. For the reasons that follow, we will affirm.

## A.    Discussion[1]

On appeal, Nahas contends first, that the District Court erred in rejecting his antitrust claim for lack of standing; second, that the denial of his privileges by Shore Medical constituted race discrimination; and third, that the District Court erred in dismissing his breach of contract claim for lack of subject matter jurisdiction. We address each argument below.[2]

### 1. Nahas's Sherman Act Claim

Where a private plaintiff asserts an antitrust claim, we require that, in addition to Article III standing, he demonstrate "antitrust standing" to sue. While not jurisdictional, that inquiry "focus[es] on the nature of the plaintiff's alleged injury" and asks "whether it

---

[1] Because we write only for the parties, who are familiar with the background of this case, we need not reiterate the factual or procedural history. The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We review *de novo* a district court's grant of summary judgment under Rule 56. *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015); Fed. R. Civ. P. 56(a).

[2] The Healthcare Quality Improvement Act (HCQIA) does not immunize officials from civil rights claims, 42 U.S.C. § 11111(a)(1)(D), or actions seeking injunctive relief, *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 191 n.1 (3d Cir. 2005). We therefore address Nahas's federal antitrust and race discrimination claims on the merits.

is of the type that the antitrust statute was intended to forestall." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016) (quoting *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538, 540 (1983)) (internal quotation marks omitted); *see Ethypharm S.A. Fr. v. Abbott Labs.*, 707 F.3d 223, 232 (3d Cir. 2013) (citing *City of Pittsburgh v. W. Penn. Power Co.*, 147 F.3d 256, 264 (3d Cir. 1998)).

To establish antitrust injury a plaintiff must show that the injury "reflect[s] the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation," *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977), or, put differently, that the "challenged conduct affected the prices, quantity or quality of goods or services" available or had a competition-reducing effect beyond the plaintiff's "own welfare." *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) (quoting *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 728 (3d Cir. 1991)). In the context of a denial of physician privileges, in particular, we have held that unless the restriction significantly reduces the services available to patients in the area or "completely extinguish[es] [the practitioner's] ability to provide . . . services," it does not constitute an antitrust injury. *Id.*

Applying these principles here, it is clear that Nahas failed to make the requisite showing. Nahas argues that Shore Medical's denial of his application prevented him from participating in the relevant market, thereby placing him at a competitive disadvantage. Specifically, he asserts that he was unable to provide certain services to his hospitalized patients and that seeking privileges elsewhere would disrupt his patient referral patterns, and he points us to expert reports finding that the economic reality of the market makes

3

pursuing *any* alternatives potentially harmful to his practice. From this he suggests he suffered "the type [of injury] that the antitrust statute was intended to forestall." *Hartig Drug Co.*, 836 F.3d at 269.

We are not persuaded. Though he complains about the limitation placed by Shore Medical on his ability to practice, that is not an injury that "affected the prices, quantity or quality of goods or services" available to consumers or that had an anticompetitive effect beyond Nahas's "own welfare." *Mathews*, 87 F.3d at 641. Not only does Nahas retain general and vascular surgery privileges at Shore Medical, but he also has unrestricted endovascular privileges at a nearby facility and is capable of applying for similar privileges elsewhere. The restriction of Nahas's endovascular privileges thus does not "completely extinguish [his] ability to provide . . . services" and bar him from the relevant market, nor does it deny patients access to services as consumers. *Id.*

Even drawing "[a]ll reasonable inferences . . . in favor of the nonmoving party," as we must on summary judgment, there was insufficient evidence of an antitrust injury. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(a). The District Court therefore did not err in concluding Shore Medical was entitled to judgment as a matter of law.

## 2. Nahas's § 1981 Claim

We analyze Nahas's § 1981 claim for race discrimination under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973): first, the plaintiff must establish "a prima facie case of . . . discrimination," *id.*; if he succeeds, "[t]he burden then must shift to the employer to articulate some legitimate,

4

nondiscriminatory reason for the employee's rejection," *id.*; and if the employer meets its burden, the plaintiff must show that the "stated reason[s] for [his] rejection [were] in fact pretext" for discrimination, *id.* at 804.

The dispute here centers on this third step.[3] To establish pretext at summary judgment, a plaintiff must provide evidence that "1) casts sufficient doubt upon . . . [the] reasons proffered . . . so that a factfinder could reasonably conclude that each reason was a fabrication" or "2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). Such evidence may include preferential treatment of other employees who are similarly situated. *See McDonnell Douglas*, 411 U.S. at 804.

As evidence that Shore Medical's proffered reasons satisfy these conditions, Nahas asserts that the application criteria were applied unequally and that he was "objectively more qualified" than the candidate conditionally approved. Appellant's Br. 52. He focuses, in particular, on the supervision requirement as "a classic *post hoc* fabrication" applied strictly to him and not others, Appellant's Br. 54, and while he does not dispute his own failure to satisfy it, he takes issue with Shore Medical's grant of privileges to a non-Arab candidate who had not yet completed that requirement and who allegedly possessed

_____

[3] The District Court held that Nahas established a *prima facie* case and that certain application criteria were contrived. Because Nahas does not dispute that Shore Medical came forward with legitimate, non-discriminatory reasons and we can resolve this case at step three of *McDonnell Douglas*, we need not address Shore Medical's argument that Nahas failed to establish a *prima facie* case at step one. *See In re Tribune Media Co.*, 902 F.3d 384, 402-03 (3d Cir. 2018) (resolving the employment discrimination claim at step three despite the parties' disagreement over the establishment of a *prima facie* case).

5

far less medical experience than Nahas. According to Nahas, that disparate treatment, in "relax[ing] [the] qualifications for one candidate" by accepting that candidate prior to his fulfillment of the supervision requirement, reveals pretext. Appellant's Br. 53.

Disparate treatment is evidence of pretext, however, only if the candidates are also similarly situated, *McDonnell Douglas*, 411 U.S. at 804; *Fuentes*, 32 F.3d at 765, and here they are not. For one thing, the other applicant was only approved on the condition that he complete his vascular fellowship with an endovascular component and meet the remaining criteria. Nahas, on the other hand, had neither completed all the application criteria nor demonstrated that he would be able to do so before beginning practice. To the contrary, the surgeries he would have Shore Medical credit towards his completion of these criteria were improperly performed without privileges or any supervision during a disciplinary suspension, and therefore cannot be counted toward the requisite number of supervised procedures. JA765-68, 778. In addition, the record reflects that the unsatisfied criteria Nahas characterizes as "*post hoc* fabrication[s]" that "came late in the peer review process," Appellant's Br. 54, were in fact well-established, "state court-ordered . . . [c]riteria," JA8, that were applied consistently to other applicants. In short, Nahas offered nothing more than "conclusory, self-serving" speculation that Shore Medical's reasons for declining to grant him approval were pretextual. *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)).

Because Nahas failed to "cast[] sufficient doubt upon" Shore Medical's proffered justifications or provide evidence that would "allow[] the factfinder to infer that

6

discrimination was more likely than not a motivating or determinative cause" for the denial of his privileges, *Fuentes*, 32 F.3d at 762, the District Court correctly determined his § 1981 claim could not survive summary judgment.

### 3. Nahas's Breach of Contract Claim

Having reviewed Nahas's federal claims, the District Court opted to decline supplemental jurisdiction and dismissed Nahas's state law claim for breach of contract. We review that decision for abuse of discretion, *see Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 104 (3d Cir. 2015), and against the backdrop of our case law holding that where all federal claims are dismissed before trial, a district court "*must decline to decide the pendent state claims*" unless "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for" ruling on them, *North Sound Capital LLC v. Merck & Co.*, 938 F.3d 482, 494 n.11 (3d Cir. 2019) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)); 28 U.S.C. § 1367(c)(3).

Nahas does not dispute the Court's consideration of judicial economy and convenience. Instead, he reasserts the illegitimacy of the application criteria and contends that he is entitled to judgment as a matter of law in light of the District Court's finding at step one of *McDonnell Douglas* that the supervision requirement was contrived.

Even if the application criteria and supervision requirement were contrived, however, whether Nahas satisfied the written criteria under Section Two of the Bylaws is only relevant to the alleged impairment of his contractual rights, *see Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)—not to the question of whether the District Court abused its discretion in declining to exercise supplemental jurisdiction. On that score, the

7

District Court reasonably concluded, based on the parties' extensive litigation experience and familiarity with the state court system, that "state court presents a more appropriate place for [Nahas] to bring these claims," JA39. That determination was well within its discretion, and we perceive no reason to disturb it. *See Maher*, 805 F.3d at 112.

**B.     Conclusion**

For the foregoing reasons, we will affirm the judgment of the District Court.

8